JAMES AND BRENDA MITCHELL        IN THE

    *Plaintiff*             *        CIRCUIT COURT

v.                MAY 22         OF MARYLAND FOR

                 CIRCUIT COURT *

CALIFORNIA LENDING GROUP, INC.,  FOR BALTIMORE CITY    BALTIMORE CITY
et al..                   *

    *Defendants.*            *       Case No. 24-C-03-001046

                       *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## PLAINTIFFS' MEMORANDUM:

### IN OPPOSITION TO MOTION TO DISMISS FILED
### BY PSBL LENDING CORPORATION

*and*

### IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR
### SUMMARY JUDGMENT

Plaintiffs, by their undersigned counsel, submit this memorandum of law in opposition to the motion to dismiss filed by defendant PSBL Lending Corporation and in support of their Cross-Motion for Summary Judgment.

As discussed further below, the Mitchells' claim is not barred by limitations because the deed of trust governing their second mortgage was signed under "seal" and is therefore governed by the twelve (12) year statute of limitations established by MD. COURTS & JUD. PROC. CODE ANN. § 5-102. Even if the three year statute of limitations (MD. COURTS & JUD. PROC. CODE ANN. § 5-101) applies, the Plaintiffs' claim is still

timely because they filed their action within three years from the date it accrued. The accrual date is also tolled under MD. CTS. & JUD. PROC. CODE ANN. § 5-203 because the Mitchells were never provided the disclosure form that MD. COM. LAW CODE ANN. § 12-407.1(a)(2) requires be given to every applicant for a secondary mortgage loan under the Maryland SMLL.

For these reasons the defendant's motions to dismiss should be denied.

Summary Judgment in favor of the Mitchells is appropriate because the undisputed evidence establishes that the Mitchells' second mortgage loan includes improper charges under the Maryland SMLL and that the Defendant has received improper interest payments of $26,187.25 and improper closing costs of $1,335.00.

**A.    The Plaintiffs' Complaint Properly Alleges a Cause of Action under the Maryland SMLL.**

The Maryland SMLL regulates the issuance of second mortgage loans in the state of Maryland. As explained in *Williams v. Standard Federal Savings and Loan Association*, 76 Md. App. 452, 455 (1988):

> [I]t is a law intended to guard the foolish or unsophisticated borrower, who may be under severe financial pressure, from his own improvidence. The law achieves this beneficent purpose by penalizing even the unwitting violator to the extent of limiting him to recovery of the principal amount of the loan. This is consistent with the strong Maryland policy against usury. *See Plitt v. Kaufman*, 188 Md. 606, 612, 53 A.2d 673 (1946 [1947] ).

*Id.* at 455, *quoting Duckworth v. Bernstein*, 55 Md. App. 710, 724, 466 A.2d 517 (1983).

A "Secondary Mortgage Loan" is defined by the Maryland SMLL as "a loan or

deferred purchase price secured in whole or in part by a mortgage, deed of trust, security agreement, or other lien or real property located in the State, which property: (i) Is subject to the lien of one or more prior encumbrances, except a ground rent or other leasehold interest; and (ii) Has a dwelling on it designed principally as a residence with accommodations for not more than four families." MD. COM. LAW CODE ANN. § 12-401(i).

The loan made to the Mitchells is a "Secondary Mortgage Loan" as defined by the statute.

Prior to October 1, 1998, the Maryland SMLL authorized lenders to collect a loan origination fee "not exceeding $250 or 2 percent of the net proceeds of the loan." MD. COM. LAW CODE ANN. § 12-405(a)(1998). "Net proceeds" is defined as the difference between the full amount of the secondary mortgage loan and the amount of interest taken in advance on the loan plus the amount of the loan origination fee. MD. COM. LAW CODE ANN. § 12-401(f).

In addition to the origination fee, a lender is authorized to charge and collect the actual fees paid to a public official or governmental agency for recording or satisfying the instrument securing the loan. MD. COM. LAW CODE ANN. § 12-405(b).

No other expenses or charges are permitted under the SMLL:

Prohibited Charges

A lender may not directly or indirectly, contract for, charge, or receive, any interest, discount, fee, fine, commission, brokerage, charge, or other

consideration in excess of that permitted by this subtitle.

MD. COM. LAW CODE ANN. § 12-411.

Thus, the following fees normally charged by lenders are prohibited from being charged in a second mortgage governed by the Maryland SMLL:

1. Credit Report
2. Processing Fees
3. Appraisal Fees
4. Flood Certificates
5. Discount Points
6. Courier Fees
7. Document Preparation Fees
8. Underwriting Fees
9. Administration Fees
10. Application Fees

The Maryland SMLL also requires that a person may not make a secondary mortgage loan unless the person is licensed under or exempt from the licensing requirements of the Maryland Mortgage Lender Law, MD. COM. LAW CODE ANN. § 12-402; regulates the maximum amount of interest that may be charged by a lender, MD. COM. LAW CODE ANN. § 12-404; prohibits discrimination based upon age in granting or denying an application for a loan, MD. COM. LAW CODE ANN. § 12-403.1; and prohibits the lender from collecting "a delinquent or late charge of the greater of $2 or 5 percent of the amount of any delinquent or late periodic installment." MD. COM. LAW CODE ANN. § 12-405(c).

The statute also requires that certain detailed information as to limitations on the lender, rights of the borrower, the cost of the loan, and the effective annual interest rate

be given to the borrower at the time the loan is made.  MD. COM. LAW CODE ANN. §12-407.

Finally, § 12-407.1 requires that a disclosure form be provided to all applicants for a secondary mortgage loans that sets forth, in summary form, the maximum charges that can be made for the loan.  MD. COM. LAW CODE ANN. §12-407.1.  A copy of the mandated disclosure form is attached as **Exhibit A**.

The remedy available to a borrower under the Maryland SMLL is set forth at §12-413:

<u>Civil Penalties</u>

Except for a bona fide error of computation, if a lender violates any provision of this subtitle he may collect only the principal amount of the loan and may not collect any interest, costs, or other charges with respect to the loan.  In addition, a lender who knowingly violates any provision of this subtitle also shall forfeit to the borrower three times the amount of interest and charges collected in excess of that authorized by law.

MD. COM. LAW CODE ANN. § 12-413.

Thus, even if the violation of the statute is unintentional, the lender is prevented from collecting any interest for the loan.  Moreover, where the borrower can establish that the lender "knowingly" violated the Maryland SMLL provisions regulating the amount of interest and other charges imposed by the lender, the borrower may recover enhanced damages from the lender, i.e.. "three times the amount of interest and charges collected in excess of that authorized by law." *Id.*

**B.**   **The Plaintiffs' Second Mortgage Loan includes Charges in Excess of Those Authorized by the Maryland SMLL.**

James E. Mitchell. Sr. and Brenda L. Mitchell obtained a secondary mortgage loan (as defined by the Maryland SMLL) from California Lending Group, Inc. on October 9, 1997, secured by a lien on their residence.  The principal amount of the loan was $37,100.00   The interest rate was 14.395 percent.   The last scheduled payment under the loan is due on November 1, 2012.  **Exhibit B,** Affidavit of James Mitchell.

California Lending Group, Inc. received a promissory note from the borrowers and was named the beneficiary of a second mortgage Deed of Trust to secure those loan.  The Deed of Trust was signed "Under Seal."  **Exhibit C.**

At closing, James E. Mitchell, Sr. and Brenda L. Mitchell were charged the following illegal fees under the SMLL: a Credit Report fee of $25.00; Processing fee of $200.00; Underwriting fee of $225.00; Settlement or closing fee of $375.00; Title examination fee of $275.00; Title insurance fee of $100.00; Judgment search fee of $30.00; Release fee of $50.00; and Airborne fee of $55.00.  **Exhibit B.**  By charging these fees California Lending Group, Inc. violated the Maryland SMLL.

These illegal fees were pro-rated over the life of the loan so that every monthly mortgage payment includes a portion of the illegal fees disguised as principal and interest payments.  Complaint ¶ 15.  This is demonstrated by the amortization table of the Mitchell loan, attached as **Exhibit D**.  The illegal fees charged for the Mitchell loan equal $1,335.00.  Under the loan's amortization, principal equal to this amount were not paid

6

off until the September, 1999 payment. *Id.*

Subsequent to the closing of the second mortgage transaction, California Lending Group sold the note and the rights associated therewith to PSB Lending Corporation. Complaint ¶ 16.

PSB Lending Corporation is liable under the Maryland SMLL because, as part of the principal repayment, it has "receive[d] . . . charge[s] . . .in excess of that permitted by" the Maryland SMLL. MD. COM. LAW CODE ANN. § 12-411.

PSB Lending argues that the Maryland SMLL does not impose liability upon assignees (PSB Lending) for conduct allegedly committed by the assignor (California Lending Group). Maryland law is clear, however, that an assignee of a mortgage is subject to the equities and defenses of the mortgagor against the original mortgagee. *Financial Credit Corporation v. Williams*, 246 MD. 575, 583 (1967) *citing LeBrun v. Prosise*, 197 Md. 466, 475 (1951). Additionally, the violations of the Maryland SMLL by the originator mean that, as between the Mitchells and the originator, the portion of the promissory note requiring payment of the interest was a nullity. The promissory note can have no greater value in the hands of the assignee than it had in the hands of the assignor. *Hunter v. Chase*, 144 Md. 13 (1923). Therefore, an assignee, such as Defendant, is prevented from collecting interest on second mortgage made in violation of the Maryland SMLL.

### C.   The Mitchells' Claim Is Not Barred by Limitations

Defendant urges this Court to adopt Judge Smalkin's reasoning in *Miller v. Pacific Shore Funding*, a case which is currently on appeal to the Fourth Circuit and in any event is nothing more than an "*Erie* guess" by a Federal district judge deserving no precedential deference.

Additionally, unlike the loans in *Miller*, the deed of trust and promissory note in this case were signed "under seal" and are therefore governed by the twelve (12) year statute of limitations established by MD. COURTS & JUD. PROC. CODE ANN. § 5-102. *See* Exhibit C.[1] Thus, the Mitchells' claim would be timely even under Judge Smalkin's analysis in *Miller* because his lawsuit was filed within 12 years of the date of the closing (i.e., the accrual date established by Judge Smalkin's opinion).

The Court of Special Appeals ruled, in *Pacific Mortgage and Investment Group, Ltd. v. Horn*, 100 Md. App. 311 (1994), that when a mortgage is signed "under seal" a borrower's statutory claim asserting a violation of the Maryland Commercial Law is subject to the 12 year statute of limitations. In *Pacific Mortgage*, Mrs. Horn and her late husband entered into a mortgage with Pacific Mortgage on August 27, 1986 executing a document where "the word 'seal' was printed next to each of the Horns' signatures." *Id.* at 315. In 1991, Mrs. Horn filed suit and ultimately obtained summary judgment in her favor based upon defendants' violations of the consumer loan credit provisions codified

---

[1]     In *Miller*, the notes and deeds of trust were not signed "under seal" so the 3 year statute of limitations applied.

at MD. COM. CODE LAW ANN. § 12-301, *et seq. Id.* at 318-19. The trial court also ruled that the twelve year statute of limitations applied to the case because the loan was a document under seal. *Id.*

In affirming the trial court, the Court of Special Appeals made clear that "§ 5-102(a)(3) of the Courts and Judicial Proceedings Article provides that the statute of limitations for contracts under seal is twelve years." *Id.* at 321. *Pacific Mortgage* is instructive because that case, like the instant lawsuit, (1) involved a mortgage transaction, (2) involved a statutory claim under the Maryland commercial code, not a claim on the contracts (i.e., the note and/or deed of trust), and (3) where the terms of the loan alleged to violate the Maryland statute were disclosed to the borrower prior to the closing.

In *Pacific Mortgage*, the Court of Special Appeals made clear the 12 year statute of limitations applies to statutory claims relating to mortgage documents signed "under seal" and that a borrower can assert a statutory claim against a lender more than three years after the date of closing.

This interpretation is consistent with a plain reading of MD. COURTS & JUD. PROC. CODE ANN. § 5-102 which does not attempt to limit the 12 year statute of limitations to specific causes of actions, but rather applies to "[a]n action <u>on</u>" a specialty, including a "promissory note or other instrument under seal." *Id.* In this case, the deed of trust constitutes the second mortgage which the Mitchells seek to have revised into a non-interest obligation. As in *Pacific Mortgage*, their statutory claim (for violation of the

9

Maryland SMLL) constitutes an action on a specialty and is governed by the 12 year statute of limitations.

Even if the three year statute of limitations (MD. COURTS & JUD. PROC. CODE ANN. § 5-101) applies, the Plaintiff's claim is still timely.  Although the Maryland limitations statutes do not define when a cause of action accrues, over time the Maryland Courts have adopted a liberal "discovery rule," pursuant to which accrual is deemed to occur only when the plaintiff has "knowledge of circumstances which would cause a reasonable person in the position of the plaintiff[ ] to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [tort]." *Pennwalt Corp. v. Nasios*, 314 Md. 433, 448-49, 550 A.2d 1155 (1988) (quoting *O'Hara v. Kovens*, 305 Md. 280, 302, 503 A.2d 1313 (1986)). *See also*, *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 334, 635 A.2d 394 (1994) ("Recognizing the unfairness inherent in charging a plaintiff with slumbering on rights not reasonably possible to ascertain, this Court adopted what is known as the discovery rule, which now applies generally in all civil actions, and which provides that a cause of action accrues when a plaintiff in fact knows or reasonably should know of the wrong.").

When a plaintiff invokes the discovery rule, the time at which the plaintiff became aware of his or her cause of action becomes the ultimate issue to be determined. The question of whether a plaintiff was on notice of a cause of action is a question of fact. *O'Hara v. Kovens*, 305 Md. 280, 295, 503 A.2d 1313 (1986).  "[Q]uestions of fact on

which a limitations defense will turn are to be decided by the jury or, when sitting as a jury, by the court." *Id.* at 301, 503 A.2d 1313. It is not an issue that is to be decided at the motion to dismiss stage of the litigation.

The Mitchells first became aware that their loan might not comply with the Maryland SMLL on or about September 20, 2001. **Exhibit B**, ¶ 9. They had no reason to suspect that California Lending Group included closing charges that allegedly violated the Maryland SMLL. This is especially the case given that California Lending Group also failed to comply with the mandatory notice requirement of MD. COM. CODE LAW ANN. § 12-407.1 (West 2002). **Exhibit B**, ¶ 7.

In the *Miller* case, Judge Smalkin chose to ignore controlling Maryland law and ruled that because the plaintiff's complaint was filed more than three years from the date the plaintiff obtained the loan the plaintiff's claim was barred by limitations. Judge Smalkin ruled that accrual of a cause of action under the Maryland SMLL is automatic as of the date of closing, irrespective of the date when a borrower first learned of the violation of the statute by the lender. "Knowledge of facts, however, not actual knowledge of their significance, starts the statute of limitations running." 224 F. Supp. 2d at 986.

In reaching this conclusion, Judge Smalkin ignored Maryland's "discovery rule" and effectively turned back the clock to 1917, when the Maryland law of limitations provided, with limited exceptions, that a cause of action accrued on the date of the wrong,

11

irrespective of when the plaintiff discovered that the defendant had wronged him. *See*

*Hahn v. Claybrook*, 130 Md. 179, 182, 100 A. 83 (1917).

Maryland courts addressing the application of the "discovery rule" have flatly

rejected the approach taken by the Judge Smalkin. For example, the *Miller* ruling does

not comport with the holding of *Frederick Road Limited Partnership v. Brown & Sturm*,

360 Md. 76, 756 A.2d 963 (2000). In *Frederick Road*, the issue was the date of accrual

of a legal malpractice cause of action relating to advise given on how to best transfer

property in order to minimize tax liability. The legal advice at issue was provided in

1981. 360 Md. at 81. Another law firm hired by the plaintiffs also advised the plaintiffs

throughout the early 1980s that the advice by the defendant (Brown & Sturm) was wrong

and would result in significant tax consequences in the future.[2]

The plaintiffs did not sue Brown & Sturm until 1995, seven years after the date

when they had reached a settlement with the IRS to pay taxes owed on the transfer made

in accordance with the poor legal advice provided in 1981, and more than twelve years

after they had first received notice that the 1981 legal advice was erroneous. 360 Md. at

88. The defendant sought summary judgment on limitations on the ground that the latest

date that accrual could have occurred was the date of the IRS settlement. The trial court

---

[2]    360 Md. at 81 ("Wolf disagreed with Brown's advice, calling it 'badly flawed' from an estate planning perspective."); *Id.* at 82-83 ("Mr. King subsequently discharged Wolf as the couple's attorney. In reply, Wolf wrote a lengthy letter to Mr. King, with a copy to Brown, expressing concern about the potential tax consequences of the property transfer transaction. Wolf believed that the fair market value of the farm could be between $27 million and $54 million and that the sale could lead to serious tax consequences.").

12

agreed and ruled:

> [The King children] necessarily knew at [the] point of final settlement [with the IRS] that the representations and promises made by [Brown & Sturm] regarding avoidance of additional taxes had not and would not ever be realized.

> In short the undisputed facts indicated that [the King children] were or should have been put on notice, at least at that point in time [when they settled with the IRS for $ 20 million] such that a reasonable person would have made reasonable inquiry as to the cause of action against [Brown & Sturm].

360 Md. at 89. The Maryland Court of Special Appeals affirmed, holding "[o]nce appellants settled the tax case, they had actual knowledge of sufficient material facts giving rise to their claims against appellees." 360 Md. at 89, *quoting Frederick Road Limited Partnership et. al., v. Brown & Sturm, et al.*, 121 Md. App. 384, 408-09, 710 A.2d 298 (1998).[3] The Maryland Court of Appeals reversed.

At the outset, the Maryland Court of Appeals made clear that the discovery rule is far broader than Judge Smalkin's interpretation that "[k]nowledge of facts, however, not actual knowledge of their legal significance, starts the statute of limitations running." Rather, under Maryland law, the key issue is knowledge of <u>injury</u>, and this knowledge requires notice of both the nature and cause of injury. As the Maryland Court of Appeals explained:

> The discovery rule tolls the accrual of the limitations period until the time

---

[3]     This is essentially the same result that would be reached under Judge Smalkin's analysis in *Miller*. As of this point in time, the plaintiffs had suffered an injury and had knowledge of every operative fact relating to the legal advice of the defendant law firm.

the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury. Thus, before an action is said to have accrued, a plaintiff must have notice of the nature and cause of his or her injury.

360 Md. at 95-96.

Notice of the <u>nature</u> of the injury requires not only notice of the operative facts but also notice of their legal significance. The Mitchells filed their lawsuit well within three years from the date they first learned of the nature of their injury and, therefore, filed this lawsuit well within three years from the date their cause of action accrued.

The Maryland Court of Special Appeals' recent decision in *Pappano v. Chevy Chase Bank, FSB*, 145 Md. App. 670, 806 A.2d 334 (2002) also illustrates the error in Judge Smalkin's analysis of the date of accrual. In *Pappano*, the plaintiffs applied for a home equity credit line secured by their residence and the closing occurred on October 9, 1990. During the closing, plaintiffs indicated on the closing sheet the desire to have credit life insurance on both of their lives. After the closing a mistake was made and, instead of providing life insurance for both husband and wife, insurance was provided for only the wife. Mr. Pappano died on August 19, 1996. Mrs. Pappano made inquiries to the bank in the spring of 1997 as to whether life insurance benefits were payable as a result of her husband's death. A total of three inquiries were made, all of which resulted in the bank indicating that no insurance existed. *Pappano*, 145 Md. App. at 675.

In 1999, Mrs. Pappano decided to sell the residence. At closing the bank sent a letter addressed to her late husband setting forth the payoff balance on the line of credit

14

and including a charge for credit life insurance. This prompted another inquiry from Mrs. Pappano to the bank, which initially stated that there was insurance on Mr. Pappano's life, but later recanted. *Id.* at 676.

Mrs. Pappano brought suit on December 17, 1999 (more than 9 years after the closing and more than three years after Mr. Pappano's death). After the trial court granted summary judgment on statute of limitations grounds, Mrs. Pappano appealed.

The Maryland Court of Special Appeals reviewed the Maryland "discovery rule" decisions and focused on the following:

> In so ruling, the [*Poffenberger*] Court expressly abandoned any concept of implied notice as a basis for knowledge and held that,
>
> > '[a]ffirmatively speaking, we determine the discovery rule contemplates actual knowledge – that is express cognition, or awareness implied from knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.'

*Pappano*, 145 Md. App. at 680 (*quoting Poffenberger v. Riser*, 290 Md. 631, 636, 431 A.2d 677 (1981), *quoting Fertitta v. Bay Shore Dev. Corp.*, 252 Md. 393, 402, 250 A.2d 69 (1969), *quoting Blondell v. Turover*, 195 Md. 251, 257, 72 A.2d 697 (1950)).

On appeal, the defendants offered two alternative accrual dates supporting summary judgment in their favor: the date of Mr. Pappano's death (August 19, 1996); and "the days following the closing when they did not receive documentation of insurance coverage" (i.e., November 1990). *Pappano*, 145 Md. App. at 681.

The Maryland Court of Special Appeals rejected both arguments and reversed the trial court, ruling:

> We agree with appellees that any breach, either of contract or a tort duty, by the Bank occurred at the date of closing of the home equity loan (or shortly thereafter) when the requested policy of insurance was not issued to the Pappanos. Because the question of the reasonableness of her actions is one of fact, a trier of fact could find, on the facts before us, that her cause of actions did not accrue until the spring of 1997 when she made inquiry of the Bank. Therefore, her suit, filed on December 17, 1999, was arguably filed within the applicable statute of limitations. We do not believe that failing to make inquiry between the date of her husband's death in July 1996, and her inquiry to the Bank in the spring of 1997, was per se unreasonable. The present factual scenario establishes a question of fact for submission to a trier of fact; it is not susceptible to resolution on summary judgment.

*Pappano*, 145 Md. App. at 682.

The *Pappano* decision rejected the argument that a cause of action relating to mistakes made at a real estate closing and disclosed on the settlement sheet accrues on the date of closing. The *Pappano* decision also reinforces the long line of Maryland decisions holding that "implied notice" does not serve as a basis of knowledge sufficient to begin the running of the statute of limitations.

Judge Smalkin's reasoning that a borrower is charged with notice of the provisions of the Maryland SMLL and thus was on inquiry notice as of the date of the closing is precisely the type of "implied notice as a basis of knowledge" argument that has consistently been rejected by the Maryland appellate courts.

Finally, the *Pappano* decision reinforces that, in cases such as these, accrual is a fact issue that must be resolved by the jury.

16

In an opinion issued on May 6, 2003, the Maryland Court of Appeals affirmed this

portion of the Court of Special Appeals ruling in *Pappano*, and explained:

> In a nutshell, we agree with the Court of Special Appeals that it was error to enter
> summary judgment for Chevy Chase. Whether, under the *Poffenberger* standard,
> Ms. Pappano was on inquiry notice, prior to her first conversation with the Chevy
> Chase branch manager in the Spring of 1997, that insurance had no been provided
> on her husband's life is a triable issue of fact, not one that, one this record, may be
> resolved as a matter of law
>
> \*     \*     \*
>
> In Maryland the general statute of limitations begins to run when the cause of
> action accrues. Although traditionally an action was deemed to accrue when the
> wrong complained of was committed (and the time allowed to file suit from that
> date), over the years this Court began chipping away at that approach and
> substituting instead, for particular kinds of cases, the "discovery rule" – that an
> action did not accrue until the plaintiff knew or reasonably should have known of
> the wrong.

*American General Assurance Company v. Pappano,* Slip Op. at 11, 13 (May 6, 2003).

The cases relied upon by Judge Smalkin are easily explained away. In fact, *Post v.

Bregman*, 349 Md. 142 (1998) is not a statute of limitations case. There simply is no

Maryland statute of limitations case that supports the proposition that a plaintiff unaware

that he has been harmed by a violation of a statute is deemed to have notice of the harm at

the date of the violation of the statute. Similarly, this case is nothing like *Doe v.

Archdiocese of Washington*, 114 Md. App. 169 (1997), which dealt with the issue of "at

what point in time an adult who was repeatedly sexually abused or battered as a child is

put on inquiry notice that the conduct constituted an actionable 'wrong'". *Id*. at 178. The

Court of Special Appeals resolved this question by focusing on the fact that the sexual

abuse constituted a battery and that in such cases limitations would begin to run at the

17

time of the conduct, not the time of manifestation of injury. Most notably, the plaintiff in *Doe* "concede[d] that he retained memories of the underlying conduct throughout is adulthood . . .", *id.* at 182, and thus was clearly on inquiry notice for more than 3 years prior to initiation of the lawsuit. Here, the Mitchells never knew they had been injured under the Maryland SMLL until shortly before filing this lawsuit.

The Mitchells' claim is also timely filed under the "continuation of events" theory first recognized in *Washington B. & A. Elec. R.R. Co. v. Moss*, 130 Md. 198, 100 A. 86 (1917), wherein the Maryland Court of Appeals explained that:

> The general rule seems also settled that in the computation of the statutory period, in cases, where there is an undertaking which requires a continuation of services, or the party's right depends upon the happening of an event in the future, the statute begins to run only from the time the services can be completed or from the time the event happens.

*Id.* at 204-05.[4]

---

[4]   *See also Vincent v. Palmer*, 179 Md. 365, 19 A.2d 183 (1941):

> The fourth question is whether any portion of Palmer's claim is barred by the Statute of Limitations. In order to escape the bar of the statute in this State, actions of account shall be commenced "within three years from the time the cause of action accrued." Code. art. 57, sec. 1. In other words, the statute begins to operate at the time the cause of action becomes vested and enforceable, not from the time of the making of the promise. *Murdock v. Winter's Adm'r*, 1 Har. & G. 471, 473[, 1827 WL 1293 (1827)]. When an account is settled between partners, and a balance is ascertained, the right to sue then arises, and from that time the statute begins to run. *Holloway v. Turner*, 61 Md. 217, 223 [(1884)]. Where a contract does not mention the period of employment, and the claim of the employee is based upon 'continuous employment,' indicating one entire contract, even though the work may be interrupted from time to time, the statute will not run until the completion of the contract. *Schaffner v. Schaffner's Estate*, 98 Kan. 167, 157 P. 402; 37 C.J., Limitations of Actions, sec. 175. In a case where a bookkeeper for a corporation had been employed to do extra work on the books,

Mr. and Mrs. Mitchell are obligated to make loan payments through November 1, 2012.  **Exhibit B**, ¶ 3.  Under the "continuation of events" theory, the applicable limitations period is tolled until the loan contract is complete, such that the limitations period would extend until three years following the final payment on their second mortgage loan.

Additionally, the unambiguous text of MD. COM. LAW CODE ANN. § 12-407.1(a)(2) requires that a disclosure form, **Exhibit A**, be given to every applicant for a secondary mortgage loan under the Maryland SMLL.  The undisputed affidavit evidence is that Plaintiffs received no such notice, **Exhibit B** at ¶ 7, and thereby were not put on notice of the limitations on closing costs contained in the Maryland SMLL.  Because of this failure, Plaintiffs are entitled to a further tolling of the statute of limitations under MD. CTS. & JUD. PROC. CODE ANN. § 5-203 ("If the knowledge of a cause of action is

---

for which he was to be paid whatever his services were worth, this Court held that the mere fact that the corporation had failed to make any settlement therefor during a period of 13 years, although he had often asked for payment, would not justify a finding that he had waived or abandoned the claim. *Richardson v. Anderson*, 109 Md. 641, 651, 72 A. 485, 489, 25 L.R.A.,N.S., 393, 130 Am.St.Rep. 543 [(1909)].  In this case the employer did not specify when he would pay the employee's share.  On the contrary, he considered the possibility that the employee might eventually become a vital factor and shareholder in the business, and assured him that the profit-sharing agreement would 'remain in force' as long as he continued in the employ of the organization.  Palmer's claim to 10 per cent of the net profits must necessarily be based upon an accounting to be made by his employer, and no accounting has yet been made.  Manifestly, limitations do not run against his claim until an accounting is made or his services are ended.

*Id.* at 374-375.

kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud.").

Finally, as explained in *Pierce v. Johns-Manville Sales Corporation*, 296 Md. 656 (1983), "the determination of when a cause of action accrues is properly made with reference to the rationale underlying statutes of limitations." *Id.* at 665, *citing Goldstein v. Potomac Elec. Power Co.*, 285 Md. 673, 684, 404 A.2d 1064 (1979); *Harig v. Johns-Manville Prods. Corp.*, 284 Md. 70, 83, 394 A.2d 299 (1978).

> The adoption of statutes of limitation reflects a policy decision regarding what constitutes an adequate period of time for a person of reasonable diligence to pursue a claim. Such statutes are designed to balance the competing interests of each of the potential parties as well as the societal interests involved. Thus, one of the purposes of such statutes is to assure fairness to a potential defendant by providing a certain degree of repose. This is accomplished by encouraging promptness in prosecuting actions; suppressing stale or fraudulent claims; avoiding inconvenience that may stem from delay, such as loss of evidence, fading of memories, and disappearance of witnesses; and providing the ability to plan for the future without the uncertainty inherent in potential liability. Another basic purpose is to prevent unfairness to potential plaintiffs exercising reasonable diligence in pursuing a claim. Still another purpose is to promote judicial economy.

*Pierce v. Johns-Manville Sales Corporation*, 296 Md. at 656, *citing*, *Goldstein v. Potomac Elec. Power Co.*, 285 Md. at 684; *Harig v. Johns-Manville Prods. Corp.*, 284 Md. at 75-76; *Wilson v. Johns-Manville Sales Corp.*, 684 F.2d 111, 118-19 (D.C. Cir.1982).

Judge Smalkin's limitations analysis is not supported by any of the rationales

underlying statutes of limitations.

First, Judge Smalkin's application of the statute of limitations does not advance the interest in providing a certain degree of repose. The Mitchells' second mortgage loan contract provided for payments and mutual obligations between the parties into the future. The possibility of default by the Mitchells exists throughout the life of the loan and therefore, the possibility also exists that she might raise as a defense in a default proceeding that the loan is unenforceable or that she was entitled to a set off in the amount of damages owed under the Maryland SMLL. There can be no realistic expectation of repose until the conclusion of the contract.

Judge Smalkin's analysis is not supported by the interest in suppressing stale or fraudulent claims. Liability in this case will be determined by examination of the types and amounts of closing charges – factual matters that are beyond dispute and incapable of being changed over time.

For the same reasons, Judge Smalkin's limitations analysis is not supported by the interest in avoiding the inconvenience of loss of evidence, fading memories or disappearance of witnesses. The liability determination in this case will not turn on witness testimony, but rather upon the loan closing documents which set forth the types and amounts of closing charges. These documents are safeguarded by the defendants throughout the life of the loan. Since loans such as these are often assigned from the original lender to subsequent holders, all of the relevant documents are maintained in loan

files that are transferred as part of the assignment process.

Judge Smalkin's limitations analysis is not supported by the interest of providing the ability to plan for the future without the uncertainty inherent in potential liability. Given the ongoing nature of the contractual relationship between the parties, this interest only comes into existence once the loan has been repaid in full.

Judge Smalkin's limitations analysis does not advance the strong Maryland public policy of protecting unsophisticated borrowers and punishing violators of the state's usury statutes. The clear intent of the Maryland SMLL is that lenders are not to be allowed to collect interest on any secondary mortgage loan for which improper closing costs were charged. Under Judge Smalkin's limitations analysis, a failure to discover that the improper charges were made at closing within three years from the date of closing, dooms the borrower to pay interest for the remaining life of the loan which often extends ten or more years into the future. This analysis effectively guts the Maryland SMLL by withholding the remedy mandated by the law in those situations where the borrower is ignorant of his or her rights under the law during the first three years after the date of closing.

The record in this case establishes that the Mitchells acted with appropriate diligence, having instituted their lawsuit within three years of first learning of the potential violations. Thus, applying Judge Smalkin's analysis would also fail to advance the interest of preventing unfairness to plaintiffs, such as the Mitchells, who have

exercised reasonable diligence in pursuing their claims.

Finally, Judge Smalkin's limitations analysis does nothing to advance judicial economy given that a defaulting borrower would have the right to assert violations of the Maryland SMLL as a defense to any foreclosure action.

Thus, the Plaintiff's claim is not barred by limitations.

**D.      Summary Judgment Should be Granted in Favor of the Mitchells**

Maryland Rule 2-501(e) provides that "[t]he Court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law."

In this case, the undisputed evidence is that the Mitchells' loan was made in violation of the Maryland SMLL and that Defendant has received payments in violation of the Maryland SMLL.  These payments can be calculated from the information set forth in Mr. Mitchell's affidavit (establishing improper closing costs in the amount of $1,335.00) and the loan's amortization schedule (establishing that $26,187.25 in interest has been collected through May, 2003).

Under the Maryland SMLL, Defendants are required to refund all improper charges and may not collect any interest, costs, or other charges with respect to the loan. Thus, judgment should be entered against Defendants, jointly and severally, in the amount of $27,522.25.  Judgment should also be entered permanently enjoining Defendant from

collecting any further interest over the remaining life of the loan.

WHEREFORE, for the reasons set forth above, the Mitchells respectfully request that the motion to dismiss be denied and that summary judgment be granted in their favor.

Respectfully Submitted,

E. David Hoskins
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
400 East Pratt Street, Suite 800
Baltimore, Maryland 21202
(410) 662-6500

*OF COUNSEL*

Eric G. Calhoun
LAWSON, FIELDS, MCCUE, LEE & CAMPBELL
14135 Midway Road, Suite 250
Addison, Texas 75001

A. Hoyt Rowell III
Kevin Oufnac
Dan Myers
RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC
174 East Bay Street
P.O. Box 879
Charleston, SC 29402

## <u>Certificate of Service</u>

I HEREBY CERTIFY that on this _2 2 d_ day of ___May___, 2003, a copy of

the foregoing was served by First Class U.S. Mail, postage prepaid, on the following:

Daniel J. Tobin
KIRKPATRICK & LOCKHART LLP
1800 Massachusetts Avenue, N.W.
Washington, D.C. 20036-1800
*Counsel for PSB Lending Corporation*


E. David Hoskins

25